UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD DAWKINS,

                          Plaintiff,

– against –

COPELAND, Correctional Officer; M. HOLINESS, Grievance Coordinator; RICE, Civilian; SCULLY, Cashier Officer; S. CANADY, Grievance Coordinator; EXECUTIVE DIRECTOR OF PROGRAMS; DEPUTY WARDEN FOR PROGRAMS; DR. KATZA, Medical Director; CAROLYN SAUNDERS, Warden of North Infirmary Command; K. TILLEY, Captain; LOUNETT DAWKINS, Captain; M.D. LILIAN LWIN, Surgery; M.D. LUEDERS MENO, Surgery; M.D. SOULA PRIOVOLOS, Visiting Attended; M.D. RONALD SIMON; and M.D. IXEL CERVERA, Supervisor Resident,

                          Defendants.

**OPINION AND ORDER**

17 Civ. 9926 (ER)

Ramos, D.J.:

On December 19, 2017, Edward Dawkins, a prisoner incarcerated at Great Meadow Correctional Facility in Comstock, New York, filed the instant action pursuant to 42 U.S.C. § 1983. Dawkins alleges the above-captioned defendants violated his rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution while he was a pretrial detainee on Rikers Island. Doc. 2.

Two groups of defendants have moved to dismiss Dawkins' Complaint. *See* Docs. 35, 41. The first group includes S. Canady, Officer Copeland, and Lounett Dawkins (collectively, the "Correction Defendants").[1] The second group includes Drs. Meno Lueders and Soula Priovolos (collectively, the "Hospital Defendants"). For the reasons stated below, the motions to dismiss are GRANTED.

---

[1] The record before the Court does not indicate any relation between Edward Dawkins and Lounett Dawkins.

## I. BACKGROUND[2]

### A. <u>Factual Background</u>

In his Complaint and supporting papers, Dawkins alleges that employees of the New York City Department of Correction (the "Department of Correction"): (1) interfered with his access to the courts and the free flow of his incoming and outgoing mail; (2) were deliberately indifferent to the unconstitutional conditions of his confinement; (3) failed to follow certain grievance procedures; (4) and failed to supervise or train subordinates, such that an unconstitutional policy or custom can be attributed to the City. *See generally* Docs. 2, 56–57. Dawkins also alleges that doctors employed by Lincoln Hospital (also known as Lincoln Medical Center) in the Bronx, New York: (1) committed medical malpractice and negligence while treating him; (2) and were deliberately indifferent to his serious medical needs. *Id.* The relevant incidents giving rise to these allegations are summarized below.

#### 1. Dawkins' Trip to the Lincoln Hospital

On January 2, 2015, Dawkins was escorted by officers of the New York City Police Department to Lincoln Hospital to receive treatment for injuries sustained during an assault by four unknown assailants. Doc. 2. at 4; *see also* Doc. 56 at 16. While at Lincoln Hospital, x-rays were taken of Dawkins' face, chest, and lungs. Doc. 2 at 4. An unidentified doctor later informed Dawkins that he had four broken ribs and a fractured left eye socket. *Id.* Dawkins was then admitted to Lincoln Medical's intensive care unit and observed for five days. *Id.* During these five days, an ultrasound of Dawkins' chest and ribs was never performed. *Id.*

---

[2] The following facts are drawn from the allegations in Dawkins' complaint, which the Court accepts as true in evaluating the motions to dismiss. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Given Dawkins' status as a pro se plaintiff, the Court also draws from and considers the additional factual allegations in Dawkins' opposition papers. *See Long v. Lafko*, 254 F. Supp. 2d 444, 446 (S.D.N.Y. 2003).

Drs. Soula Priovolos and Lilian Lwin discharged Dawkins without performing an ultrasound on his chest and ribs area and without performing a CT scan to determine whether his broken ribs had caused internal bleeding, notwithstanding that the attending physician, Dr. Meno Leuders, wrote a medical memorandum concerning the requirement of an ultrasound after an x-ray taken of Dawkins found mild internal bleeding *Id.* Dawkins alleges that Drs. Priovolos and Lwin disregarded his medical condition and safety when they failed to conduct those tests, and that Drs. Lueders, Ronald Simon, and Ixel Cervera failed to supervise the care he received at the hospital. *Id.* Dawkins also claims he was not issued any pain medication. *Id.* at 13. Dawkins claims that he complained to the Lincoln Hospital staff that he didn't' feel well enough to walk and that his head was spinning, but they discharged him anyway. *Id.* at 13–14. He claims the doctors were deliberately indifferent to his medical needs when they discharged him prematurely. *Id.*

Two weeks later, Dawkins was transported by stretcher to the Vernon C. Bain Center in the Bronx, New York. Doc. 56 at 20. While there, Dr. Katza and another doctor failed to follow up on Dawkins' treatment for the injuries he sustained on January 2, 2015. Doc. 2 at 8. Dawkins claims that he told the doctors that he suffered from severe apnea, had trouble breathing, and was in severe pain resulting from the injuries sustained on January 2, 2015, but the doctors didn't do anything to remedy his ailments. Instead, the doctors misdiagnosed him with a head cold and sent him on his way. *Id.* at 14. Dawkins claims he was suffering from a collapsed lung and internal bleeding during this time. *Id.*

A few days later, Dawkins was transferred to Rikers Island. Doc. 56 at 20. While on Rikers Island, Dawkins visited a dentist and had an x-ray done on his face. *Id.* After examining the results, the dentist instructed the Department of Correction to transfer Dawkins to the

3

Bellevue Hospital in Manhattan. *Id.* At Bellevue Hospital, the doctors performed an ultrasound of Dawkins' chest and determined that he had internal bleeding and a collapsed right lung. *Id.* He subsequently underwent surgery. *Id.* at 20–21.

### 2. Dawkins' Conditions of Confinement

Dawkins was housed in the North Infirmary Command facility at Rikers Island ("NIC") during the relevant period. Doc. 2 at 8. He alleges that he was provided a mattress that was too thin to support an adult body, an especially egregious condition given that he suffers from a bulging disc in his back. *Id.* He also alleges that the conditions in the dormitory area were unsafe, in that there was mold on the air-conditioning units and walls; there were exposed steam pipes with frayed fiber glass insulation everywhere; dust everywhere; and cracked plaster everywhere. *Id.* at 9–10. He also alleges that he constantly inhaled exhaust fumes from the diesel trucks, buses, and ambulances that idled adjacent to the building. *Id.* Dawkins filed a grievance concerning these conditions on January 12 and 29, 2016, and has lodged many complaints, but he states that these complaints have all fallen on deaf ears. *Id.* at 10, 22. Dawkins believes the conditions of his confinement are unconstitutional. *Id.* at 22–24.

### 3. Dawkins' Mail Troubles

On March 11, 2015, Dawkins placed two notices-of-claim addressed to the City's Office of the Comptroller and the Manhattan Municipal Building in the NIC outgoing mailbox. In these notices, Dawkins expressed dissatisfaction about the treatment he received at Lincoln Hospital and the Vernon C. Bain Center. *Id.* at 4. However, these notices were never mailed. *Id.* Instead, Officer Copeland, NIC's mail officer, informed Dawkins that he did not have adequate funds in his account to complete the transaction and thus did not mail the notices. *Id.* Dawkins

4

alleges that this was a violation of the Department of Correction's departmental policy on the processing of legal mail for indigent detainees. *Id.*

On March 30, 2015, Dawkins again tried to mail out two notices. *Id.* at 4–5. Again, these notices were never mailed. *Id.* at 5.

On April 18, 2015, Dawkins field a grievance regarding the "mishandling" of his legal mail. *Id.* This grievance was filed with the NIC Warden and the Central Office Review Committee. *Id.* Dawkins received a response from Department of Correction officials, stating that Officer Copeland did not mail out his notices because Dawkins did not have enough money in his account to complete the transaction. *Id.* He was later informed by Ms. Holiness, the grievance coordinator, that the Department of Correction doesn't pay for legal mail for indigent individuals. *Id.* Ms. Holiness was apparently informed of this policy by "Civilian Rice" and Officer Copeland. *Id.* Dawkins alleges that this is a misreading of departmental policy. He believes the failure to process his legal mail constituted a deliberate and malicious violation of his First Amendment right to the free flow of incoming and outgoing legal mail. *Id.* at 8, 11–12, 15–21. He claims that these two incidents are not isolated, but rather a practice of continuous mail tampering by Department of Correction officials.

**B.      Procedural Background**

Dawkins filed the instant Complaint on December 19, 2017, and he requested permission to proceed *in forma pauperis* ("IFP")—that is, without prepayment of court fees. Docs. 1, 2, 5. On February 6, 2018, the Court (McMahon, C.J.) granted Dawkins' application to proceed IFP. Doc. 6.

On March 8, 2018, to allow Dawkins to effect service on the Hospital Defendants— namely, Drs. Lilian Lwin, Meno Lueders, Sula Priovolos, Ronald Simon, and Ixel Cervera—the

Court (Sullivan, J.) instructed the Clerk of Court to issue summonses as to those defendants and to deliver to the United States Marshals Service all documents necessary to effect service. Doc. 8 at 2. The Court noted that each defendant must be served within 90 days of the summonses' issue dates. *Id.* at 2 (citing Fed. R. Civ. P. 4(m)). The Court noted that it was Dawkins' responsibility to request, if necessary, an extension of time for service. *Id.* (citing *Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012)). And the Court warned Dawkins that failure to timely serve a defendant, or to request an extension of time to effect service, may result in dismissal of the action as to any unserved defendant. *Id.* (citing Fed. R. Civ. P. 4(m)).

With respect to the Correction Defendants—namely, Correction Officer Copeland, Grievance Coordinator M. Holiness, "Civilian" Rice, Cashier Officer Scully, Grievance Coordinator S. Canady, Medical Director Dr. Katza, NIC Warden Carolyn Saunders, NIC Captain K. Tillery, and NIC Captain Lounett Dawkins—the Court directed the Clerk of Court to notify the Department of Correction and the New York City Law Department (the "Law Department") of the Court's request that those defendants waive service. *Id.* at 2–3.

The Court then issued a *Valentin* Order directing the Law Department to ascertain the names and addresses of the Executive Director and Deputy Director of Programs at the NIC—two defendants unidentified in Dawkins' Complaint—and to provide Dawkins and the Court with those names and addresses within sixty days. *Id.* at 3 (citing *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997)). The Court noted that upon receipt of their identities, it would issue an order adding these defendants to the action and requesting that they waive service. *Id.*

Following the Court's omnibus order, three Correction Defendants—namely, Copeland, Canady, and Lounett Dawkins—waived service of summons. Doc. 11. However, waiver of service of summons was returned unexecuted as to the other Correction Defendants. Docs. 14–

6

16. Moreover, on May 4, 2018, the Law Department identified Deputy Warden Vaz as the Deputy Warden for Programs at NIC during the period relevant to Dawkins' Complaint. Doc. 18.

On May 14, 2018, service was effected on Hospital Defendants Drs. Meno and Priovolos. Docs. 21–22. Service was returned unexecuted on the other Hospital Defendants. *See* Docs. 14–16.

In an order signed on July 16, 2018, the Court (Sullivan, J.) granted the served defendants leave to file motions to dismiss, *see* Doc. 30; and on August 13 and 24, 2018, the served defendants filed the instant motions to dismiss, *see* Doc. 35, 41.

Dawkins made three submissions in response to defendants' motions to dismiss. *See* Docs. 51, 56–57. The first submission contains 147 pages of exhibits. The second submission contains 29 pages of argument. The third submission contains 75 pages of argument. However, considering Dawkins' pro se status, the Court declined the Correction Defendants' request to strike Dawkins' papers as violative of Rule 12(f) of the Federal Rules of Civil Procedure; instead, the Court allowed both sets of defendants an extension of time to respond, as well as an extension of the Court's usual page limits.[3] Doc. 55.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a

---

[3] The Court acknowledges that, as Defendants assert, Dawkins' papers are confusing and prolix. However, the Court discerned that any effort to make Dawkins focus and shorten his submissions would prove futile.

plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Consequently, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all plausible and nonconclusory factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Finally, special considerations counsel in favor of relaxed pleading standards for pro se plaintiffs. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (noting that pro se complaints, "however inartfully pleaded, must be held to less stringent standards" (internal quotation marks omitted)). Accordingly, in adjudicating the motion to dismiss Dawkins' Complaint, the Court looks beyond his Complaint, considers the factual allegations contained in his myriad opposition papers, *see Long v. Lafko*, 254 F. Supp. 2d 444, 446 (S.D.N.Y. 2003), and interprets the totality of allegations in his papers to raise the strongest claims they suggest, *see Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006). As the Second Circuit has observed, a liberal construction of pro se pleadings is

especially important when dealing with civil rights complaints, like Dawkins' Complaint. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks and emphasis omitted).

### III.     DISCUSSION

#### A.     The Correction Defendants' Motion to Dismiss

In their motion, the Correction Defendants offer a host of arguments why the Court should dismiss the claims against them. The Court addresses each argument in turn.

##### 1.  *All Claims Against All Unserved Defendants are Dismissed*

At the outset, the Correction Defendants request that the Court dismiss all claims against any defendant who has not been served with process. Their request is granted.

Rule 4 of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time . . . [unless] the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m).

Here, on October 19, 2018, Judge Sullivan, then on the district court, denied Dawkins' request for a court order directing attorneys for the Correction Defendants to disclose the addresses of any unserved defendants in this case so that those defendants could be served by the U.S. Marshals. Doc. 50. In denying Dawkins' request, Judge Sullivan noted that Dawkins' action had been pending since December 19, 2017; the original order of service was entered on

March 8, 2018; the served Defendants' motions to dismiss were made in August 2018; and Dawkins' response to the motions to dismiss was originally due September 4, 2018. Consequently, citing the "belated nature of [Dawkins]' request," Judge Sullivan declined to issue any further orders regarding service. *Id.* at 2.

The Second Circuit has cabined the discretion of district courts to revisit earlier rulings by treating those decisions as "the law of the case," typically subject to revision only when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted); *see also Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) ("Under the law of the case doctrine, courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." (internal quotation marks omitted)).

Here, the Court sees no reason to depart from Judge Sullivan's earlier ruling. There has not been an intervening change of controlling law; there is no new evidence suggesting that Dawkins did, in fact, have good cause for his failure to take proactive steps to effect service in a timely manner; and the Court discerns no clear error or manifest injustice stemming from Judge Sullivan's decision not to extend Dawkins' time to serve defendants when, at the time of Dawkins request, almost 300 days had passed since commencement of the action and typically litigants are allowed only 90 days to effect service, absent good cause shown. What's more, allowing service at this late juncture may prejudice the unserved defendants—parties to alleged incidents that occurred roughly three to four years ago. Consequently, after weigh[ing] the impact that a dismissal would have on the parties," *see Harper*, 424 F. App'x 36, 39 (2d Cir.

10

2011), and notwithstanding that some claims against the unserved defendants may be time-barred in any future actions, the Court dismisses all unserved parties from this action without prejudice.

### 2. *Dawkins' Claims under the New York State Constitution Fail*

The Correction Defendants request that the Court dismiss Dawkins' claims under the New York State Constitution. *See* Doc. 36 at 1 n.1. The request is granted. "The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016); *accord Peterec v. State*, 998 N.Y.S.2d 900, 901 (App. Div. 2015) ("The claim alleging violations of the New York State Constitution is unavailable, since the claimant has an alternative remedy available."). Here, § 1983 and state common law provide Dawkins myriad avenues to seek redress for his claims. Accordingly, his claims under the State Constitution are dismissed.

### 3. *Dawkins' § 1983 Claims Fail*

Dawkins raises a host of claims under § 1983. To succeed under § 1983, Dawkins, as plaintiff, must allege that (1) defendants are state actors or acted under color of state law at the time of the challenged action, and (2) the challenged action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Here, the Correction Defendants argue that all of Dawkins' § 1983 claims fail because "he has not adequately pleaded facts upon which a reasonable inference may be drawn that [they] impeded his access to the courts, unreasonably interfered with the free flow of mail,

subjected him to unconstitutional conditions of confinement, or were deliberately indifferent to his serious medical needs." Doc. 36 at 1–2. The Court address each argument in turn.

> a. Dawkins Claims for Interference with Court Access and Legal Mail Fail

Dawkins brings related claims against the Correction Defendants for (1) unlawfully interfering with his access to the courts and (2) interfering with the free flow of incoming and outgoing mail. Under the First and Fourteenth Amendment, incarcerated persons possess a constitutional right to access the courts, and this right encompasses the right to send and receive legal mail. *See West v. Rivera*, No. 13 Civ. 3965 (RA), 2015 WL 997788, at *3 (S.D.N.Y. Mar. 6, 2015) (citing *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)). To establish a claim for unlawful interference with access to the courts, a plaintiff must plead factual allegations establishing an "actual injury"; put differently, "the plaintiff must 'demonstrate that the prison hindered his efforts to pursue a non-frivolous legal or administrative action.'" *Id.* (quoting *Guarneri v. West*, 495 F. App'x 142, 144 (2d Cir. 2011)).

Here, the Correction Defendants contend that Dawkins has not pleaded facts establishing an actual injury resulting from any alleged failure on their part to timely mail his two notices-of-claim because the notices were addressed to the wrong location and thus would not have furthered any legal action regardless of whether it was mailed. The Court agrees.

Dawkins alleges that he drafted two notices-of-claim related to the treatment he received at Lincoln Hospital on January 2, 2015, and the failure of doctors at Vernon C. Bain Center to follow up on Dawkins' treatment two weeks later. *See, e.g.*, Doc. 2 at 5, 8, 12–14; Doc. 57 at C-9, F-2; Doc. 56 at 19–20. Dawkins alleges that he addressed the notices to the New York County Clerk, the Office of the New York City Comptroller, and the Manhattan Municipal Building, and that he then placed the notices in the NIC mailbox, at which point the Correction Defendants

failed to mail the notices. Doc. 2 at 11. However, Lincoln Hospital is operated by the New York City Health and Hospitals Corporation. *See Hill v. N.Y.C. Health & Hosps. Corp.*, 47 N.Y.S.3d 267, 267–68 (App. Div. 1st Dep't 2017); *accord Aggarwal v. St. Barnabas Hosp.*, 263 F. Supp. 2d 671, 673 (S.D.N.Y. 2003). And "[s]ervice of the notice of claim on the Comptroller of the City of New York is insufficient to constitute service on the defendant New York City Health and Hospitals Corporation." *Stallworth v. N.Y.C. Health & Hosps. Corp.*, 663 N.Y.S.2d 287, 288 (App. Div. 1997); *see also Scantlebury v. N.Y.C. Health & Hosps. Corp.*, 830 N.E.2d 292, 297 (N.Y. 2005) ("Here, plaintiff served a notice of claim on the City of New York. The proper—and different—party was [H+H]. A party sustaining injury allegedly attributable to these health facilities must file a verified notice of claim with [H+H] prior to the commencement of a lawsuit." (internal quotation marks and alterations omitted)). Because Dawkins plainly acknowledges that he did not address his notices to the New York City Health and Hospitals Corporation, and because his notices, as addressed, would not have sufficed as proper service on the New York City Health and Hospitals Corporation, without more, the Court cannot conclude that Dawkins suffered actual injury from the Correction Defendants' alleged misconduct. Accordingly, Dawkins' claim for interference with court access is dismissed.

Inmates also have a First Amendment right to the "free flow of incoming and outgoing mail." *Davis*, 320 F.3d at 351. In light of this right, "[r]estrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation, and must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* (internal quotation marks and alterations omitted). For liability to attach, "the inmate must show that the prison officials 'regularly and unjustifiably' interfered with the incoming [or outgoing] legal mail." *Id.* (citation omitted).

Here, while Dawkins alleges there were "practices of deliberate and malicious violations" of his right to the free flow of incoming and outgoing mail, this allegation is conclusory and insufficient to state a claim. Dawkins must instead plead nonconclusory factual allegations sufficient to raise the inference that "(1) the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) . . . the tampering unjustifiably chilled [his] right of access to the courts or impaired the legal representation he received." *Id.*

Finally, insofar as Dawkins alleges that the Correction Defendants failed to correctly follow the inmate grievance procedures after he complained about his mail troubles, the Court notes that "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (citations, alterations, and quotation marks omitted).

b. <u>Dawkins Claim for Unconstitutional Conditions of Confinement Fails</u>

Dawkins alleges that he was exposed to unconstitutional conditions of confinement while he was a pretrial detainee in the custody of the Correction Defendants. Doc. 2 at 30. "Jailed individuals are protected against 'deliberate indifference' to 'conditions that pose a substantial risk of serious harm' by the Eighth Amendment or the Fourteenth Amendment." *Howard v. Brown*, 15 Civ. 9930, 2018 WL 3611986, at 4 (July 25, 2018) (citation omitted). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). This is so because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id.* (internal quotation

marks and alterations omitted). That said, "[a pretrial] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

To establish a § 1983 claim for allegedly unconstitutional conditions of confinement, a plaintiff must make two showings. *Id.* First, the plaintiff must "show[] that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id.*; *see also id.* at 30 ("Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . ." (internal quotation marks omitted)). Second, the plaintiff must "show[] that the officer[s] acted with at least deliberate indifference to the challenged conditions." *Id.* Of note, the requisite *mens rea* to establish deliberate indifference in cases involving pretrial detainees (and thus, the Fourteenth Amendment) diverges from the *mens rea* requirement in cases involving convicted persons (and thus, the Eighth Amendment). *Id.* at 34–35. The Eighth Amendment imposes a subjective *mens rea* standard: To be liable, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 32 (quoting *Farmer*, 511 U.S. at 837). In contrast, however, the Fourteenth Amendment applies an objective *mens rea* standard: The official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)).

Here, assuming Dawkins has pleaded sufficiently serious conditions of confinement, Dawkins fails to plead factual allegations sufficient to give rise to an inference of deliberate

indifference on the part of the Correction Defendants. Rather, Dawkins alleges the requisite *mens rea* in conclusory fashion only, alleging that the Correction Defendants were aware of the conditions but chose to ignore them. *See* Doc. 57 at A-6. Such a conclusory allegation, however, without more, is insufficient to properly allege personal involvement and deliberate indifference. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). Moreover, Dawkins fails to allege plausible and nonconclusory facts suggesting that he *informed* the served Correction Defendants about these conditions. At best, he alleges that they *should have* been on notice of the conditions, given that he filed a grievance about the conditions on July 12, 2016. Doc. 2 at 9, 23. But a defendant's mere receipt of a grievance is insufficient to show their personal involvement in a constitutional deprivation. *See Allah v. Annucci*, No. 16 Civ. 1841 (KMK), 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (collecting cases and observing that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (internal quotation marks omitted)). Accordingly, this claim is dismissed.

c. Dawkins Claim for Deliberate Indifference to His Medical Needs Fails

The Correction Defendants argue that Dawkins claim for deliberate indifference to medical needs should be dismissed because he fails to allege that he told any of them about his medical needs. Doc. 7–9. The Court agrees. To sustain a claim for deliberate indifference to serious medical needs, Dawkins must show that (1) he had a serious medical condition, yet (2) he was treated with deliberate indifference by the defendant-officials. *See Gersbacher v. City of*

16

*New York*, 134 F. Supp. 3d 711, 724 (S.D.N.Y. 2015) (citing *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir. 2009)). For pretrial detainees, the *mens rea* element of a claim for deliberate indifference of medical needs "is judged by the same deliberate indifference standard articulated in *Darnell*." *Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018) (internal quotation marks omitted).

Here, Dawkins fails to allege facts suggesting he informed any of the Correction Defendants about his medical condition. Instead, he states only that he filed a grievance and does not allege that *any* of the Correction Defendants received or read his grievance. In any event, "a defendant's denial of an administrative grievance or decision not to override the medical personnel's advice are inadequate to establish liability." *Williams v. Cty. of Orange*, No. 17 Civ. 8225 (NSR), 2019 WL 1244509, at *5 (S.D.N.Y. Mar. 15, 2019); *see also Ward v. Capra*, No. 16 Civ. 6533 (KMK), 2018 WL 1578398, at *6 (S.D.N.Y. Mar. 29, 2018) ("Plaintiff filling out a grievance and appeal regarding the health care he was being provided does not satisfy [the deliberate indifference] standard. Even if [defendant] had knowledge of the grievance, a prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been personally involved if he does so."). Accordingly, due to the dearth of factual allegations suggesting the Correction Defendants knew or should have known about Dawkins' allegedly serious medical condition, this claim is dismissed.

    d.   Dawkins' *Monell* Claim Against the Correction Defendants Fails

"Under Second Circuit case law, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor. *Monell* does not provide a separate cause of action . . . ; it *extends* liability to a municipal organization where that organization's failure to

17

train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Birch v. Danzi*, No. 18-CV-839 (PKC), 2018 WL 3613016, at *7 (E.D.N.Y. July 26, 2018) (internal quotation marks omitted) (quoting *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010)). Because Dawkins' Complaint, as currently constructed, fails to state a constitutional deprivation by the Correction Defendants, his *Monell* claim is dismissed.

e. Dawkins' Claims for Equitable Relief are Moot

The Correction Defendants argue that Dawkins' claims for equitable relief are moot given his transfer out of the custody of the Department of Correction. The Court agrees. "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Here, given that Dawkins has been transferred to the Great Meadow Correctional Facility, outside the custody and control of the Department of Correction, any claims for equitable relief against the Department and its staff are moot and thus dismissed.[4]

**B.   The Hospital Defendants' Motion to Dismiss**

The Hospital Defendants contend that all of the claims against them fail. The Court agrees.

**1.  *Dawkins Claim for Deliberate Indifference to His Medical Needs Fails***

To state a claim for deliberate indifference to medical needs, Dawkins "must plead facts 'show[ing] that [he] had a serious medical condition and that it was met with deliberate indifference." *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)). To show that the Hospital Defendants

---

[4] Given the Court's dismissal of all § 1983 claims against the Correction Defendants, at this juncture the Court need not, and thus does not, determine whether the Correction Defendants are entitled to qualified immunity for any of the constitutional deprivations alleged by Dawkins.

18

acted with deliberate indifference, Dawkins must plead facts suggesting that they "acted *intentionally* to impose the alleged condition, or *recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the[y] *knew, or should have known*, that the condition posed an excessive risk to health or safety." *Id.* (quoting *Darnell*, 849 F.3d at 35). Dawkins has failed to make such a showing, as his Complaint is bereft of allegations suggesting that Drs. Lueders and Priovolos—the only served Hospital Defendants in this case, were aware or should have been aware of any excessive risk to Dawkins' health or safety and yet failed to act with reasonable care to mitigate such risk.

### 2. *Dawkins'* **Monell** *Claim Against the Hospital Defendants Fails*

Dawkins also brings a *Monell* claim against the Hospital Defendants. However, because his Complaint, as currently constructed, fails to state a cognizable constitutional deprivation on the part of the Hospital Defendants, his *Monell* claim against them is dismissed.

### 3. *Dawkins' Claims against the Hospital Defendants under State Law*

Dawkins' state law claims against the Hospital Defendants for negligence and medical malpractice are time-barred. Claims for negligence and malpractice against the New York City Health and Hospitals Corporation and its employees must be brought within one year and ninety days. *See* N.Y. Gen. Mun. Law §§ 50-i, 50-k(6); N.Y. Unconsol. Law § 7401(2); *see also Mhone v. City of New York*, No. 13 Civ. 8014 (PAE), 2014 WL 1407702, at *7 (S.D.N.Y. Apr. 11, 2014). Here, Dawkins commenced this action on December 20, 2017, but the incidents he complains of occurred almost two years prior, in January 2015. Because Dawkins failed to bring suit against the Hospital Defendants within one year and ninety days, his state law claims against them are dismissed.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are GRANTED. Dawkins' claims against the Hospital Defendants for negligence and medical malpractice are DISMISSED with prejudice; and the remainder of his claims are DISMISSED without prejudice. Dawkins will have an opportunity to replead his claims that have been dismissed without prejudice, as Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave [to amend a pleading] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (internal quotation marks omitted).

If Dawkins wishes to file an amended Complaint, he must move to do so by May 1, 2019, and he must attach to his motion a copy of the proposed amended Complaint. Failure to move to amend in accordance with the instructions above and within the timeframe allotted, absent good cause shown, may result in the action's permanent dismissal. The Clerk of Court is respectfully directed to terminate the motions, Docs. 35, 41, and to mail a copy of this Opinion to Dawkins.

It is SO ORDERED.

Dated: March 31, 2019
       New York, New York

                                                    Edgardo Ramos, U.S.D.J.