UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD C. DAWKINS,

                    Plaintiff,

– against –

COPELAND, *Correctional Officer*; M.
HOLINESS, *Grievance Coordinator*; RICE,
*Civilian*, SCULLY, *Cashier Officer*; S.
CANADY, *Grievance Coordinator*; *Executive
Director of Programs* DEPUTY WARDEN VAS
#242; DR. RAMOS *and* DR. KATZ, *Medical
Directors*; DR. JOHN DOE; CAROLYN
SAUNDERS, *Warden of North Infirmary
Command*; K.TILLERY, *Captain*; LOUNETTE
DAWKINS, *Captain*; CAPTAIN COLON;
CAPTAIN COOPER; *and* DEPUTY WARDEN
GRACE, *Executive Supervisor Operations*,

                    Defendants.

**OPINION & ORDER**

17 Civ. 9926 (ER)

RAMOS, D.J.:

        Edward Dawkins, incarcerated and *pro se*, sues a group of employees of New

York City's Department of Correction and a group of medical professionals at the City's

Health and Hospital Corporation.  He alleges that the defendants ignored his medical

needs, subjected him to unconstitutional conditions of confinement, and interfered with

his mail while he was a pre-trial detainee at Rikers Island.  He brings his lawsuit under 42

U.S.C. § 1983.

        This Opinion and Order concerns the motion to dismiss Dawkins' Amended

Complaint brought by three of the defendants from the Department of Correction:

Officer Shirley Canady, Officer Tanoya Copeland, and Capt. Lounette Dawkins.  The

Court will also address, *sua sponte*, claims against defendants that have not been served

in this action.  For the following reasons, Canaday's and Capt. Dawkins' motions to

dismiss are GRANTED in their entirety, Copeland's motion to dismiss is GRANTED in

part and DENIED in part, and claims against all other defendants are DISMISSED. Of the dismissed defendants, all are dismissed with prejudice, except for Cooper, Colon, and Grace, who are dismissed without prejudice.

## I.    BACKGROUND

Dawkins' allegations are made in his Amended Complaint, Doc. 79, and an affidavit attached to his memorandum in opposition to the moving defendants' motion to dismiss, Doc. 101. Because Dawkins is proceeding *pro se*, the Court will consider the factual allegations made in the affidavit alongside the Amended Complaint. *See Long v. Lafko*, 254 F. Supp. 2d 444, 446 (S.D.N.Y. 2003).

### A.  Medical Care

Police brought Dawkins to Lincoln Medical Center on January 2, 2015, after he had been assaulted by four individuals. Am. Compl. ("AC") ¶ 30, Doc. 79. Physicians diagnosed him with broken ribs, a broken eye socket, and a broken cheek. AC ¶ 31. Because of a pending misdemeanor charge, Dawkins was discharged into police custody on January 7, after which made an appearance in a Bronx criminal court. AC ¶ 31. The presiding judge, after observing Dawkins' condition, ordered that he be seen by a physician for further treatment. AC ¶ 32.

On January 8, Dawkins was admitted to the Vernon C. Bain Correctional Center ("VCBC") for pretrial detainment. There, he received an intake examination, and informed the examining nurse of the treatment he had received at Lincoln Medical Center. AC ¶ 33; Mot. in Opp. Ex. 2, Doc. 101. He also told the nurse that he suffered from narcolepsy and severe sleep apnea, which required treatment with a BiPAP machine. AC ¶ 33. Dawkins had a follow-up appointment with a physician the next day, during which he was prescribed a double mattress to assist with rib pain due to the fractures he sustained from his assault. Mot. in Opp. Ex. 3. Dawkins alleges that throughout his time at VCBC he was assigned a steel frame bed with a two-inch thick mattress. AC ¶ 34.

Dawkins complained of severe chest plains and breathing problems on January 11, while still detained at VCBC.  Mot. in Opp. Ex. 5 ("Aff.") ¶ 7.  He was seen  by a nurse, who performed an electrocardiogram, and the John Doe physician named in his Amended Complaint, who diagnosed him with a cold and prescribed ibuprofen, a muscle relaxer, and an antacid.  AC ¶ 35; Mot. in Opp. Ex. 18.  Dawkins has since identified the John Doe as Mohammed Chowdhury.  Aff. ¶ 8.

Dawkins was transferred to the Otis Bantum Correctional Center on Rikers Island a few days after January 11.  He saw a dentist on January 21 to treat complications related to his broken cheek and eye socket.  AC ¶ 36; Aff. ¶ 10.  After taking an x-ray, the dentist ordered that Dawkins be immediately transferred to Bellevue Hospital Center.  AC ¶ 36.  The physicians there performed another x-ray and a CT scan.  AC ¶ 36.

The Bellevue physicians found a significant amount of blood in Dawkins' lungs, causing the right lung to collapse.  AC ¶ 38.  They operated immediately to repair the lung, placing him under a local anesthetic because of fears his sleep apnea could cause complications under a general anesthetic.  AC ¶ 39.  Dawkins indicates that the procedure was very painful.

Dawkins arrived at Northern Infirmary Command ("NIC") on Rikers Island on January 29 to recover from his surgery.  Aff. ¶ 15.  During his stay at NIC, Dawkins was issued a BiPAP machine, but without a humidifier.  Aff. ¶ 15.  He was also issued a mattress that he alleges was too thin to support him, especially since he suffered from herniated and bulging discs in his back.  Aff. ¶ 16.  Dawkins complained of these conditions to defendant Dr. Raul Ramos, a medical director at NIC, and defendant Carolyn Saunders, the warden of NIC.  Aff. ¶ 15–17.  He alleges that he was issued a thinner mattress after he complained to Saunders.  AC ¶ 17.  He also claims that he suffered tooth decay, as well as dry mouth, headaches, blurred vision, loss of balance, and nose irritation each morning because he was never issued a BiPAP humidifier.  AC ¶ 42.

Dawkins' dormitory was searched in February 2017 by defendants Captain Colon, Deputy Warden Grace, and Captain Cooper. Aff. ¶ 46. Grace directed Colon to remove medical mattresses from the beds. Aff. ¶ 46. Dawkins complained to Cooper that he needed the medical mattress. Aff. ¶ 46. Cooper spoke with the medical director at the time, defendant Katz, who indicated that Dawkins was not authorized for one. Aff. ¶ 47. Dawkins asked a physician's assistant for assistance; the assistant, with the approval of Katz, wrote a prescription for a thicker mattress. Aff. ¶ 48. When informed of the prescription, Capt. Dawkins indicated that the Department of Correction no longer supplied the thicker mattresses. Aff. ¶ 48.

After the search of his dormitory, Dawkins made a formal request for a thicker mattress as an accommodation for his medical conditions. Aff. ¶ 51. The request was approved, but he never received a thicker mattress. Aff. ¶ 51. Dawkins alleges that the failure to provide him with a thicker mattress aggravated his sleep apnea and caused him pain.

Dawkins also alleges that medical staff at NIC did not properly treat his narcolepsy by giving him too little prescribed medication, and failed to perform follow-up tests to better diagnose his condition. Aff. ¶ 53. As a result, he alleges, he was unable to stay awake during a pretrial hearing and was forced to enter a plea of guilty to an offense. Aff. ¶ 54.

### B. Mail Difficulties

While at NIC, Dawkins attempted to file a notice of claim in March 2015 against the New York City Health and Hospitals Corporation ("H+H"), which operates Lincoln Medical Center, Bellevue Medical Center, and the medical facilities at both VCBC and Rikers Island. He first sent separate notices of claim to New York City's Office of the Comptroller and the general counsel of H+H via certified mail with return receipt requested on March 11. Aff. ¶ 19. Dawkins resent his notices on March 30. Aff. ¶ 21. He alleges that none of the notices were received and that his inmate account was never

charged for the cost of the mailing. Aff. ¶¶ 19, 21. In an April call with Dawkins, a clerk for the Comptroller's office indicated that facilities on Rikers Island had "a history of not mailing claims against them." Aff. ¶ 21.

Dawkins spoke about his mail with defendant Copeland on March 20. At the time, Copeland worked as NIC's assigned mail officer, and Dawkins had seen her pick up mail from his dormitory. AC ¶ 18, Aff. 20. She told him that she had taken the notices to a trailer to be processed. Aff. ¶ 20.

Sometime afterwards, Dawkins spoke with Copeland and defendant Capt. Tillery. Dawkins told Tillery that there was no entry indicating that his notices had been received by Copeland in a logbook for outgoing legal mail. Aff. ¶ 23. Copeland said that Dawkins did not have sufficient funds in his inmate account to cover postage. Aff. ¶ 24. Tillery instructed Dawkins to file a grievance. Aff. ¶ 23.

Dawkins then went to Capt. Dawkins. He told Capt. Dawkins that Copeland was not following a Department of Correction directive mandating that indigent prisoners be given stationery and postage for all legal mail. Aff. ¶ 24. Capt. Dawkins said she would speak with Copeland about the matter.

Dawkins filed a grievance related to his lost mail on April 27. Mot. in Opp. Ex. 7 at 2. When interviewed as part of the investigation, Copeland indicated that Dawkins did not have sufficient funds in his inmate account to cover postage. Aff. ¶ 22. She said that she would speak with a cashier to determine how to complete the transaction if Dawkins did not have sufficient funds and would notify Dawkins when the transaction was complete. Aff. ¶ 22.

On the same day he filed his grievance, Dawkins spoke with defendant Holiness, a grievance coordinator, about his mail. She told Dawkins that the Department of Correction would only pay for legal mail after his inmate account was empty for two weeks. Aff. ¶ 27. In May, he spoke with her again, and she told him that the Department

does not pay for legal mail at all.  Aff. ¶ 28.  He alleges that this conversation was a response to his complaints to Capts. Dawkins and Tillery.

Dawkins filed another grievance on May 14, after speaking with Holiness.  Mot. in Opp. Ex. 7 at 1.  The investigator spoke with defendant Scully, a cashier at Rikers, who indicated that inmates are only considered indigent after two weeks with no funds in their account.  Scully indicated that whether to provide stamps is in the mail officer's discretion, because if there are funds in the account the inmate must purchase stamps from the facility commissary.  Scully further indicated that the Department of Correction does not pay for return receipt or certified mail and does not pay for postage of items over three ounces.

At some point, defendant Canady replaced Holiness as grievance coordinator.  Dawkins spoke with her about the mail, and she responded that she would find out where his notice had gone.  Aff. ¶ 26.  She eventually reported, as had other Department of Correction employees, that inmates are not considered indigent until their accounts had been empty for a certain period of time.  Aff. ¶ 26.

Dawkins remained at NIC over the next year and a half.  During this time he served as a member of NIC's inmate council, which was a body that spoke with prison officials — including Capt. Dawkins, Tillery, Canady, and Copeland — on the inmates' behalf.  As a representative, he continued to complain of missing legal mail and the failure of the Department of Correction to pay for postage and stationery.  Aff. ¶ 31.

On September 8, 2016, Dawkins brought up the mail issue again at a council meeting.  Aff. ¶ 32.  At the meeting, Capt. Dawkins suggested that the U.S. Postal Service sometimes failed to regularly pick up outgoing mail.  Aff. ¶ 32.  Another inmate complained to the Postal Service of delayed *incoming* mail, after which, in October 2016, the Postal Service indicated that it delivered mail to a post office near Rikers Island on a daily basis.  Mot. in Opp. Ex. 8.  The Postal Service indicated that Rikers Island staff

were responsible for picking up the mail after delivery to the post office.  Mot. in Opp. Ex. 8.

In August 2016, Dawkins mailed a petition to file a late notice of claim with the Bronx Supreme Court.  Aff. ¶ 36.  The court indicated its receipt of the petition in February 2017.  Aff. ¶ 37.  It granted Dawkins permission to proceed *in forma pauperis* upon payment of a $75 filing fee on September 27, 2017, although Dawkins alleges he was never informed of this filing.  Aff. ¶ 38.  The Bronx court denied his petition in June 2018, finding that the application was made outside the applicable statute of limitations.  Mot. in Opp. Ex. 20.

### C.  Conditions of Confinement

In his affidavit, Dawkins describes two main issues with the conditions of his confinement.  *First*, he alleges that the mattresses he was given were too thin to support any adult human, even a well one; he claims he told Katz, Ramos, Tillery, Saunders, and Capt. Dawkins of this issue on September 8, 2016.  Aff. ¶ 45.  And, *second*, he alleges that the air of his living quarters was of poor quality.  In particular, ventilation was limited and air ducts were filled with dust.  AC ¶ 43.  Mold accumulated in front of windows, a ceiling had been damaged from water leaks, and there were pipes with exposed fiberglass insulation.  AC ¶ 43.  He claims that he was also forced to breathe exhaust fumes of idling vehicles waiting for clearance to enter the Rikers Island complex.  AC ¶ 44.  Dawkins alleges these conditions caused him to suffer nose bleeds.  AC ¶ 43.  He claims he told Tillery and defendant Deputy Warden Vaz of these air quality issues.  Aff. ¶ 42

In addition to his own averments, Dawkins documents these conditions through the affidavit of a fellow inmate, *see* Mot. in Opp. Ex. 14, and a series of emails sent from a staff attorney at the Legal Aid Society to Department of Correction officials, *see* Mot. in Opp. Exs. 6, 12, 15.  There are over a dozen attached emails, mostly sent in May and June of 2016.  They notify the Rikers officials, none of whom are named defendants, of

Dawkins' complaints regarding his medical care, legal mail, and conditions of confinement.

## II.     PROCEDURAL HISTORY

Dawkins filed the instant Complaint on December 19, 2017, and he requested permission to proceed *in forma pauperis*.  Docs. 1, 2, 5.  On February 6, 2018, the Court (McMahon, C.J.) granted Dawkins' application.  Doc. 6.  That complaint named several defendants that had treated Dawkins at some point, none of whom are named in the Amended Complaint:  Dr. Lilian Lwin, Dr. Lueders Meno; Dr. Soula Priovolos, Dr. Ronald Simon, and Ixel Cervera.

On March 8, 2018, to allow Dawkins to effect service on Lwin, Meno, Priovolos, Simon, and Cervera, the Court (Sullivan, J.) instructed the Clerk of Court to issue summonses as to those defendants and to deliver to the United States Marshals Service all documents necessary to effect service.  Doc. 8 at 2.  The Court noted that each defendant must be served within 90 days of the issue dates of the summonses.  *Id.* at 2 (citing Fed. R. Civ. P. 4(m)).  The Court noted that it was Dawkins' responsibility to request, if necessary, an extension of time for service.  *Id.* (citing *Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012)).  And the Court warned Dawkins that failure to timely serve a defendant, or to request an extension of time to effect service, may result in dismissal of the action as to any unserved defendant.  *Id.* (citing Fed. R. Civ. P. 4(m)).  With respect to the defendants employed by the Department of Correction, the Court directed the Clerk of Court to notify the Department of Correction and the New York City Law Department of the Court's request that those defendants waive service.  *Id.* at 2–3.

The Court then issued a *Valentin* Order directing the Law Department to ascertain the names and addresses of two defendants unidentified in Dawkins' Complaint and to provide Dawkins and the Court with those names and addresses within 60 days.  *Id.* at 3 (citing *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997)).  The Court noted that upon

receipt of their identities, it would issue an order adding these defendants to the action and requesting that they waive service. *Id.*

Following the Court's omnibus order, the three moving defendants, Copeland, Canady, and Capt. Dawkins, waived service of summons. Doc. 11. Waiver of service of summons, however, was returned unexecuted as to the other defendants employed by the Department of Correction. Docs. 14–16. Moreover, on May 4, 2018, the Law Department identified Deputy Warden Vaz as the Deputy Warden for Programs at NIC during the period relevant to Dawkins' Complaint. Doc. 18. On May 14, 2018, service was effected on Meno and Priovolos. Docs. 21–22. Service was returned unexecuted on Lwin, Simon, and Cervera. *See* Docs. 14–16.

In a March 31, 2019 Opinion and Order, this Court dismissed any claims under 42 U.S.C. § 1983 against Lwin, Meno, Priovolos, Simon, Cervera because Dawkins failed to allege any of these defendants were aware of excessive risk to Dawkins and failed to act with reasonable care to mitigate any such risk. 2019 WL 1437049, at *9, Doc. 71 at 19. It also dismissed any state law claims against them because his Complaint was not brought within the applicable statute of limitations. *Id.*

The Court also dismissed without prejudice all claims against any unserved defendants employed by the Department of Correction, namely Holiness, Rice, Scully, Vaz, Katz, Saunders, and Tilley. 2019 WL 1437049, at *4–5, Doc. 71 at 9–11. Relying on the previous Orders of Judge Sullivan, the Court found that Dawkins had not shown good cause for why he had not been more diligent in serving the unserved defendants before the 90-day deadline prescribed in Federal Rule of Civil Procedure 4(m). *Id.*

Finally, the Court dismissed the Complaint against Copeland, Canady, and Capt. Dawkins without prejudice. The Court found, *inter alia*, that Dawkins had failed to allege an injury arising from any alleged interference with his mail, had failed to allege the personal involvement of these defendants in unconstitutional conditions of confinement, and had failed to show that he put any of the these defendants on notice of

his medical needs.  2019 WL 1437049, at *5–7, Doc. 71 at 15–17.  It also denied any *Monell* claims against the defendants, and, because Dawkins has since been transferred from NIC, any equitable relief.  2019 WL 1437049, at *8, Doc. 71 at 17.

Dawkins filed his Amended Complaint on June 13, 2019, adding Ramos, Chowdhury (then as John Doe), Colon, Cooper, and Grace as defendants.  Doc. 79.  The moving defendants filed their motion to dismiss on June 27.  Doc. 80.  They filed an additional motion to stay discovery on October 1 that is pending at this time.  Doc. 92.

Dawkins requested the Court's assistance in serving the newly added defendants in a July 2019 letter.  Doc. 84 at 3.  The Law Department requested that the Court decline to issue summonses and dismiss the claims *sua sponte* against these defendants under the authority granted by 28 U.S.C. § 1915A(b).  Doc. 85 at 2.  The Court did not issue summonses, but reserved decision on whether to dismiss the action against the unserved defendants  Doc. 88.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Consequently, when ruling on a

motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all plausible and nonconclusory factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Finally, special considerations counsel in favor of relaxed pleading standards for *pro se* plaintiffs. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (noting that *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards" (internal quotation marks omitted)). Accordingly, in adjudicating the motion to dismiss Dawkins' Complaint, the Court looks beyond his Amended Complaint, considers the factual allegations contained in his opposition papers, *see Long v. Lafko*, 254 F. Supp. 2d 444, 446 (S.D.N.Y. 2003), and interprets the totality of allegations in his papers to raise the strongest claims they suggest, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). As the Second Circuit has observed, a liberal construction of *pro se* pleadings is especially important when dealing with civil rights complaints, like Dawkins' Amended Complaint. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks and emphasis omitted).

## IV. THE MOVING DEFENDANTS' MOTIONS

To succeed under Section 1983, Dawkins must allege that (1) defendants are state actors or acted under color of state law at the time of the challenged action, and (2) the

challenged action deprived him of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

To succeed against these individual defendants, Dawkins must establish their "personal involvement in the claimed violation . . . ." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (internal quotation omitted). He may do so by alleging that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

### A. Access to the Courts & Free Flow of the Mails

As with his original complaint, Dawkins alleges that the defendants unlawfully interfered with his access to the courts. Under the First and Fourteenth Amendment, incarcerated persons possess a constitutional right to access the courts, and this right encompasses the right to send and receive legal mail. *See West v. Rivera*, No. 13 Civ. 3965 (RA), 2015 WL 997788, at *3 (S.D.N.Y. Mar. 6, 2015) (citing *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)). To establish a claim for unlawful interference with access to the courts, a plaintiff must plead factual allegations establishing an "actual injury"; put differently, "the plaintiff must 'demonstrate that the prison hindered his efforts to pursue a non-frivolous legal or administrative action.'" *Id.* (quoting *Guarneri v. West*, 495 F. App'x 142, 144 (2d Cir. 2011)).

In its March 2019 Opinion and Order, the Court dismissed this claim because Dawkins did not properly allege such an injury. He pleaded that he had attempted to serve H+H with a notice of claim via the Comptroller's office. Such service would have been ineffective because H+H is a separate entity from the City and must be served directly. *See Scantlebury v. N.Y.C. Health & Hosps. Corp.*, 830 N.E.2d 292, 297 (N.Y. 2005) ("Here, plaintiff served a notice of claim on the City of New York. The proper— and different — party was [H+H]. A party sustaining injury allegedly attributable to these health facilities must file a verified notice of claim with [H+H] prior to the commencement of a lawsuit." (internal quotation marks and alterations omitted)).

Dawkins' Amended Complaint (via the affidavit attached to his briefing papers) newly alleges that he mailed the General Counsel of H+H a notice of claim, in addition to the one he mailed the Comptroller's office. The moving defendants now argue, however, that serving H+H was never necessary because Dawkins only sought to hold the hospital corporation liable under Section 1983. Claims against H+H under Section 1983 do not require a notice of claim. *See Mejía v. N.Y.C Health & Hosps. Corp.,* 16 Civ. 9706, 2018 WL 3442977, at *14 (S.D.N.Y. July 17, 2018).

But Dawkins' allegations reach further than a civil-rights claim against the physicians that treated him. His allegations include a claim that at least one doctor employed by H+H diagnosed him with a cold while his lungs were filling with blood — an allegation which, when read with the solicitude to which *pro se* pleadings are entitled, suggests that Dawkins could have had a non-frivolous state law claim of negligence and malpractice. Indeed, when arguing for the dismissal of the original Complaint against its employees, H+H argued that Dawkins' state law allegations were meritless in part because he had failed to follow the notice of claim requirement. *See* Doc. 43 at 16 (citing N.Y. Unconsol. Law § 7401(2)).

Furthermore, if a defendant had indeed interfered with his attempts to mail a notice of claim, such action would have hindered his legal case. To successfully pursue a

claim against H+H, Dawkins needed to file notice of claim within 90 days after his cause of action accrued. N.Y. Unconsol. Law § 7401(2). He was cared for by H+H between January 2 and January 21, 2015, meaning, to be timely, he would have needed to file his claim by April 21, 2015. He attempted to mail his claims on March 11 and March 30, 2015. As Dawkins pleads his claims, Copeland never told him that his mail had been rejected or otherwise not sent until after the notice of claim period had expired. Viewing the facts in the light most favorable to Dawkins and drawing all inferences in his favor, the Court finds he would have been hindered if prison officials had interfered with his mail at this time. The moving defendants do not present any argument to the contrary in their briefing.

The Court also finds, again without any opposing argument from the defendants, that Dawkins has properly pleaded Copeland's personal involvement. He alleges that Copeland did not record his legal mail in the out-going logbook, and that it was she who collected both sets of notices from his dormitory mailbox. He further alleges that she violated Department of Correction policy by failing to post his legal mail despite his not having sufficient funds in his inmate account. As Scully, the prison cashier, indicated, whether to post a letter when there were not sufficient funds was within the discretion of the mail officer — in this case, Copeland. Accordingly, Dawkins' claim against Copeland for interference with access to the courts may proceed.[1]

Dawkins does not, however, plead the personal involvement of either Capt. Dawkins or Canady in this alleged constitutional violation. At best, he complained of the situation to both of these defendants after which they conducted investigations into the matter. As the Court held in its earlier order, "a defendant's mere receipt of a grievance is

---

[1] In their motion, the defendants do not argue that they should be entitled to qualified immunity against Dawkins' access to the courts claim — only against his conditions of confinement and medical needs claims. *See* Doc. 81 at 12–13; Doc. 105 at 9. In any event, Copeland would likely not be entitled to qualified immunity because a prisoner's right to send and receive legal mail is clearly established. *See* *Bellezza v. Holland*, 09 Civ. 8434, 2011 WL 2848141, at *8 (S.D.N.Y. July 12, 2011) (denying qualified immunity on motion to dismiss access to the courts and mails claim).

insufficient to show their personal involvement in a constitutional deprivation." 2019 WL 1437049, at *8, Doc. 71 at 16 (citing *Allah v. Annucci*, No. 16 Civ. 1841 (KMK), 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017)). Therefore, Dawkins has failed to allege a claim of intereference with access to the courts against Capt. Dawkins and Canady.

Dawkins also fails to plead a violation of his constitutional right to the free flow of the mails. Inmates have a First Amendment right to the "free flow of incoming and outgoing mail." *Davis*, 320 F.3d at 351. In light of this right, "[r]estrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation, and must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* (internal quotation marks and alterations omitted). For liability to attach, "the inmate must show that the prison officials 'regularly and unjustifiably' interfered with the incoming [or outgoing] legal mail." *Id.* (citation omitted).

Dawkins' allegations in this regard are unchanged from his original Complaint. He has failed to show in a nonconclusory manner an "ongoing practice of censorship" or that the defendants' actions "chilled [his] right of access to the courts or impaired the legal representations he received." *Id.* At best, his allegations amount to one or two instances of his mail being stopped, rather than a long-term effort to block his communication with the outside world. The allegations of violations of his right to free flow of the mails are dismissed against the moving defendants.

### B. Conditions of Confinement

"Jailed individuals are protected against 'deliberate indifference' to 'conditions that pose a substantial risk of serious harm' by the Eighth Amendment or the Fourteenth Amendment." *Howard v. Brown*, 15 Civ. 9930, 2018 WL 3611986, at 4 (July 25, 2018) (citation omitted). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment."

*Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). This is so because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id.* (internal quotation marks and alterations omitted). That said, "[a pretrial] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

To establish a Section 1983 claim for allegedly unconstitutional conditions of confinement, a plaintiff must make two showings. *Darnell*, 849 F.3d at 29. *First*, the plaintiff must "show[] that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id.*; *see also id.* at 30 ("Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . ." (internal quotation marks omitted)). *Second*, the plaintiff must "show[] that the officer[s] acted with at least deliberate indifference to the challenged conditions." *Id.* Of note, the requisite *mens rea* to establish deliberate indifference in cases involving pretrial detainees (and thus, the Fourteenth Amendment) diverges from the *mens rea* requirement in cases involving convicted persons (and thus, the Eighth Amendment). *Id*. at 34–35. The Eighth Amendment imposes a subjective *mens rea* standard: To be liable, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 32 (quoting *Farmer*, 511 U.S. at 837). In contrast, however, the Fourteenth Amendment applies an objective *mens rea* standard: The official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)).

Dawkins allegations here are largely unchanged from the allegations in his original Complaint. As the Court ruled in its March 2019 Opinion and Order, "assuming Dawkins has pleaded sufficiently serious conditions of confinement, Dawkins fails to plead factual allegations sufficient to give rise to an inference of deliberate indifference on the part of the Correction Defendants." 2019 WL 1437049, at *8, Doc. 71 at 15. The two relevant updates to his Complaint do not save this claim.

*First*, he alleges that he complained to Dawkins regarding his thin mattress in September 2016 at an inmate council meeting and in February 2017 following the search of his cell by Cooper, Colon, and Grace. But Dawkins does not allege that he told Capt. Dawkins that the thin mattress posed any "excessive risk to [his] health or safety" or that Capt. Dawkins should have known of that risk. *Darnell*, 849 F.3d at 35.

*Second*, he alleges that a staff attorney at the Legal Aid Society sent a number of emails to prison officials, relaying Dawkins' complaints about his condition. But the emails were addressed to none of the defendants in this action, and Dawkins has failed to plead any facts suggesting that any of the defendants were ever aware or should have been aware of these emails, much less whether those emails communicated any excessive risk to Dawkins' safety. *See Darnell*, 849 F.3d at 35.

Accordingly, Dawkins' claims of unconstitutional conditions of confinement are dismissed against all moving defendants.

### C. Deliberate Indifference to Medical Needs

To sustain a claim for deliberate indifference to serious medical needs, Dawkins must show that (1) he had a serious medical condition, yet (2) he was treated with deliberate indifference by the defendant-officials. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 724 (S.D.N.Y. 2015) (citing *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir. 2009)). For pretrial detainees, the *mens rea* element of a claim for deliberate indifference of medical needs "is judged by the same deliberate indifference standard

articulated in *Darnell*." *Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018) (internal quotation marks omitted).

The Court dismissed Dawkins' indifference to medical needs claims because it found he failed to plead that he had informed any defendant of his condition. 2019 WL 1437049, at *8, Doc. 71 at 17. He attempts to address the Court's finding by alleging that the defendants must have known of his condition because he had given full medical histories to prison medical officials during his intake and subsequent treatment. He also alleges he told Capt. Dawkins that he needed a thicker mattress in February 2017 when his medical mattress was taken away.

But, as with the emails documenting his conditions of confinement, Dawkins has failed to plead facts that any of the defendants read or should have read his medical charts. And he does not plead that he actually informed Capt. Dawkins of his injured back or its connection to the need for a thicker mattress. He makes no allegations whatsoever concerning Canady and Copeland. Accordingly, the indifference to medical needs claims are dismissed against the moving defendants.

\* \* \*

For the foregoing reasons, all claims are dismissed against Capt. Dawkins and Canady in their individual capacities.[2] Given that Dawkins, the plaintiff, has been afforded an opportunity to replead his allegations already, the Court dismisses those claims with prejudice. The claim against Copeland in her individual capacity for interfering with Dawkins' access to the courts survives; all other claims against her are dismissed with prejudice.

Furthermore, all claims against the moving defendants in their official capacities are dismissed with prejudice. For such claims to have survived, Dawkins must have

---

[2] Because the Court does not find any constitutional violations for the claims it has dismissed against the moving defendants, it does not reach the question of whether the moving defendants are entitled to qualified immunity for those claims.

alleged that the violations of his rights were due to "a policy, custom, or practice of the municipal defendant." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). He did not do so here in relation to the one claim that survives, against Copeland.

Finally, Dawkins mentions in his Amended Complaint that the defendants prevented him from contacting consular officials. He does not provide any factual allegations supporting this allegation at all, and so any claims based upon it are dismissed with prejudice.

## V. NON-MOVING DEFENDANTS

The Court will now address the status of the non-moving defendants in this action. They fall into three groups. First are the defendants who had been named in Dawkins' original Complaint: Holiness, Scully, Rice, Katz, Saunders, Vaz, and Tillery. Second are Ramos and Chowdhury, newly added medical professionals. And third are Cooper, Colon, and Grace, who are all Department of Correction Employees.

The Court previously dismissed Holiness, Scully, Rice, Katz, Saunders, and Tillery in its March 2019 Opinion and Order because Dawkins had made no attempt to serve them with process in a timely fashion. 2019 WL 1437049, at *4–5, Doc. 71 at 9–10. That decision, based on Judge Sullivan's decision of October 19, 2018 is the law of the case. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). As there has been no "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice," the Court will again dismiss these defendants from the case, with prejudice. *Id.*

The Court dismisses the other defendants under the authority granted by 28 U.S.C. § 1915A. In cases by prisoners brought against governmental officers, the Court may dismiss claims *sua sponte* if it determines they are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." § 1915A(b)(1).

The claims against Ramos and Chowdhury fail to state a claim because they are untimely. The statute of limitations for suits under Section 1983 is three years. *See Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995). Dawkins' latest interaction with Chowdhury was in January 2015, and he alleges that he was treated by Ramos in January 2015, as well.[3] The date he filed his Amended Complaint, June 13, 2019, is well after the three-year limitations period had expired. The claims do not relate back to the allegations in the original Complaint because both parties are new to this matter. *See Harris v. Viau*, No. 17 Civ. 9746 (KMK), 2019 WL 1331632, at *5 (S.D.N.Y. May 3, 2019) (finding Federal Rule of Civil Procedure 15 "inapplicable" because when "an amendment adds a previously unmentioned party." (internal quotation removed)).[4] Accordingly, Ramos and Chowdhury are dismissed as defendants.

Finally, the claims against Colon, Cooper, and Grace are dismissed because they fail to state a claim. Dawkins fails to allege that Colon or Grace knew or should have known of his medical conditions when they searched his cell and Grace directed Colon to remove the mattress. Cooper, though Dawkins told him he needed the mattress, checked with Katz, a doctor, before taking it away. This consultation with a medical professional cannot form the basis for a claim of deliberate indifference to Dawkins' medical needs. *See Ward v. Capra*, No. 16 Civ. 6533 (KMK), 2018 WL 1578398, at *6 (S.D.N.Y. Mar. 29, 2018) ("Even if [defendant] had knowledge of the grievance, a prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been personally involved if he does so.").

---

[3] Dawkins does allege that he informed Ramos of his thin mattress in September 2016. To the extent Dawkins has a claim arising from this interaction, it is dismissed for the same reason the claims are dismissed against Capt. Dawkins, who was at the same meeting.

[4] The Court finds it appropriate to dismiss on this basis because Dawkins had the opportunity to counter any limitations-based defense in his opposition to H+H's motion to dismiss the original complaint. *See Abbas v. Dixon*, 480 F.3d 636, 640 n.3 (2d Cir. 2007).

Because the Court is dismissing these claims *sua sponte*, and because Dawkins has not had an opportunity to address the deficiencies with his Amended Complaint as they relate to Colon, Cooper, and Grace, the Court will only dismiss the claims without prejudice. Dawkins shall be permitted one more opportunity to plead his complaints against those three defendants.

## VI. CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

- Canaday's and Capt. Dawkins' motions to dismiss are GRANTED in their entirety. The claims against them are DISMISSED with prejudice.

- All claims against Holiness, Scully, Katz, Saunders, Rice, Vaz, Tillery, Ramos, and Chowhurdy are DISMISSED, *sua sponte*, with prejudice.

- The Amended Complaint is DISMISSED as to Grace, Colon, and Cooper, without prejudice.

- Copeland's motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. The Section 1983 claim based upon alleged unlawful interference with access to the courts survives. All other claims against her are DISMISSED with prejudice.

- The moving defendants' motion to stay discovery pending the resolution of this motion, Doc. 92, is DENIED as moot.

The Court directs the parties to proceed as follows:

- Should Dawkins wish to file a Second Amended Complaint amending his claims against Cooper, Colon, and Grace, he must do so by June 1, 2020. Upon receipt, the Court will screen it and issue orders of service, if warranted. He may not add new defendants or alter the allegations made against Copeland.

- Copeland is directed to answer the Second Amended Complaint, confer with Dawkins on a discovery plan, and submit a status report to the Court by June 1, 2020.

The Clerk of Court is respectfully directed to terminate from the case Canaday, Capt. Dawkins, Holiness, Scully, Katz, Rice, Saunders, Vaz (a.k.a. "Vas" and "Executive

Director of Programs"), Tillery, Ramos, and Chowdhury (a.k.a. "Dr. John Doe"). The Clerk is also directed to terminate the motions, Docs. 80, 92.

It is SO ORDERED.

Dated:    March  31, 2020
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.